UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:11-cv-00605-MOC-DCK

| | |
|---|---|
| **YAN DONG,** | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM OF |
| Vs. | ) DECISION and ORDER |
| | ) |
| **BASF CORPORATION,** *et al.,* | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the court on defendants' Motion for Summary Judgment. Plaintiff, who is appearing pro se, contends that Defendant BASF, his former employer, unlawfully terminated his employment based on his race and/or his national origin (Asian/China). Defendants deny this contention and argue that plaintiff has not presented any cognizable evidence that his race or national origin was a motivating factor in his termination. Defendants also contend that plaintiff has improperly named as a defendant his supervisor, Jonathan Antonucci, and that he is entitled to summary judgment as a matter of well-settled law.

A hearing was held on June 19, 2013, at which defendants appeared through counsel and plaintiff appeared *pro se*. In advance of the hearing, the court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). At the hearing, the court further explained to plaintiff his right to file evidentiary materials, how to file such materials, and allowed him additional time after the hearing to file any additional materials he wanted the court to consider. In compliance with such instructions, plaintiff timely filed his "Amended Affidavit" (#70), which is accompanied by over 200 pages of exhibits.

1

**FINDINGS and CONCLUSIONS**

**I.      Background**

In reviewing the pending motion, the court has considered all the potentially admissible evidence in a light most favorable to plaintiff. It is undisputed that plaintiff was born in China and identifies his race as Asian. In 2007, plaintiff applied for a position as a chemist at BASF and indicated on his resume that he was fluent in Chinese, had work history as a Senior Chemist and Senior Research Scientist, and had been educated in China. After interviewing with several people at BASF, plaintiff was hired in January 2008 as a Senior Research Scientist Level II to work at BASF's Charlotte Technical Center.[1] There is no dispute that when BASF hired plaintiff in 2008, it knew plaintiff was Asian/Chinese.

Plaintiff began his work at BASF in February 2008, with his primary project being the "General Purpose Permanent Label Adhesive Project" ("GPP Project"). In 2008-2009, plaintiff's immediate supervisor was Michael Drewery, who completed plaintiff's performance reviews for those years. In 2008, plaintiff received a mid-range score of PL5 and in 2009, he received a score of PL4. Such ratings were on a PL1-PL9 scale, with PL1 being the lowest and PL9 being the highest. PL5 is a "meets expectations" score while PL4 is a "needs improvement" score. Plaintiff has admitted that Drewery did not discriminate against him.

In January 2010, Defendant Antonucci became plaintiff's direct supervisor. He has a bachelor's degree in chemistry and computer science and a Master's degree in chemical

---

[1] Plaintiff has proffered evidence, which appears to be aqn offer letter, indicating that he was not hired as a Senior Research Scientist Level II, but as a Senior Research Scientist Level I. Defendant has presented evidence that plaintiff's job title was Senior Research Scientist Level II at the time of his termination, including: defendant's February 2011 position statement to the EEOC (Doc. 52-3 at 52-57); the internal e-mail from Jeanne Turgeon to Cynthia Averell on February 4, 2011 (Doc. 52-4 at 3); the Company's internal HR system printout at the time of Mr. Dong's termination (attached to Second Antonucci Aff. as Exhibit F); and Plaintiff's 2010 performance review, which was attached as Exhibit C to Mr. Antonucci's May 2, 2013 affidavit (Doc. 43-2 at 19-27). While such evidence places such fact in dispute, such dispute is not material as all parties agree that plaintiff was a Senior Research Scientist and it is undisputed that BASF perceived plaintiff to be at Level II at the time of his termination.

engineering and has been employed by BASF since 1997. Prior to being plaintiff's supervisor, Defendant Antonucci had worked with plaintiff and developed concerns regarding his work. After becoming his supervisor, Defendant Antonucci worked closely with plaintiff and coached him on meeting goals in his project and communications skills.

In February 2010, the GPP project was terminated after it became apparent to BASF that the project was not going to result in a commercially viable product. When the project was terminated, plaintiff was tasked with preparing a detailed report to record the scientific achievements of the project as well as the project deficiencies. As a Senior Scientist, defendants believed plaintiff had the skills to prepare such a report, but after two weeks working on the report, plaintiff turned in what defendants described as a cryptic four-page report lacking explanation of any observations and lacking identification of any key achievements or deficiencies in the project. Despite assistance from Defendant Antonucci and several rewrites, plaintiff never submitted a report that satisfied defendants.

After termination of the GPP project, plaintiff was assigned to work on the Acronal 3624 project. Plaintiff was tasked to "scale up" a recipe developed by other scientists in preparation for North American production. Plaintiff got the recipe wrong, reversing key raw materials, expending some $20,000.00 as a result.

With the failure of the GPP project and the errors in the Acronal 3624 project, Defendant Antonucci and his supervisor, Dr. Zhao (a person who self identifies as Asian/Chinese), determined that plaintiff's work performance was unsatisfactory, and included the following deficiencies:

(1) interpretation of lab results was poorly executed;

(2) interaction with and communication to the business group was ineffective;

3

(3) administration of development programs was substandard;

(4) he did not direct work with an awareness of budget constraints, resulting in significant budget overruns;

(5) he was not able to execute "intuition," which is a scientific method of research, or apply technical knowledge to short-cut projects to a successful conclusion; and

(6) did not demonstrate leadership abilities in line with his level of employment.

Antonucci Aff. ¶ 22. Likewise, Dr. Zhao reached similar conclusions concerning plaintiff's performance at BASF:

(1) plaintiff's problem solving skills were not at the level one would expect of a Senior Research Scientist at plaintiff's employment level;

(2) he was inefficient in designing and carrying out experiments;

(3) he spent an excessive amount of time and resources running side experiments and repeating failed experiments; and

(4) he was unable to interpret and draw conclusions from the results of his experiments, or to reduce his knowledge of emulsion polymerization to practical and commercially viable products.

Zhao Decl. ¶ 8.

On August 2, 2010, plaintiff's employment with BASF was terminated for unsatisfactory performance. Defendant Antonucci recommended that BASF terminate plaintiff's employment, a decision in which Dr. Zhao concurred. Both Defendant Antonucci and Dr. Zhao have averred that at no time did they consider plaintiff's race or national origin when making the decision to terminate his employment. Antonucci Aff. ¶ 23; Zhao Decl. ¶ 12. Following plaintiff's

termination, BASF hired a German delegate at a lower level than plaintiff held during his employment. Antonucci Aff. ¶ 25.

On August 16, 2010, James J. Duis, a BASF Technical Manager, wrote plaintiff a general "to whom it may concern" letter of reference at plaintiff's request. See Plaintiff's Affidavit, Exh. 33, (#70-4) at 36. Defendant contends that Mr. Duis was not plaintiff's supervisor and did not have personal knowledge of plaintiff's overall performance, including the problems that Mr. Antonucci encountered in trying to work with plaintiff on producing an effective report or plaintiff's performance on the Acronal project. While this court has found in other cases that certain post-termination recommendations by a supervisor, who was also a decision maker, that contain a contrary evaluation of the employee's pre-termination performance create a genuine issue of material fact on the issue of pretext in a Title VII case, see Springs v. Mayer Brown, LLP, 2012 WL 366283 (W.D.N.C. Jan. 27, 2012), there is no evidence in this case that Mr. Duis was a decision maker or had any knowledge of the problems perceived by plaintiff's supervisors.

## II. Plaintiff Files a Charge of Discrimination with the EEOC

On December 8, 2010, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In the charge, plaintiff alleged that he had been discriminated against based upon his race/national origin (Asian/Chinese) when he was terminated from his position with BASF. His Charge states that the earliest date discrimination took place was August 2, 2010 – the date of his termination. While indicating on his intake questionnaire that he did not know why he believed defendants' actions were discriminatory, he indicated that he was "sudden[ly] terminat[ed] by giving false performance review." In his charge, he goes on to allege that he was "never given any about [his] work performance, nor was [he] even placed on a performance improvement plan." He alleged that Defendant Antonucci

5

had discriminated against him in the following ways: "a. He made intentional false statements on my performance; b. He degraded the satisfactory results (met/succeeded pre-determined targets) achieved by me for the GPP project, which were valued by previous management and the project team; c. He forced absolutely unreasonable time lines (e.g. the 5 days) on me and refused to give me adequate reasons." Plaintiff's Dep. Ex 18. On September 1, 2011, plaintiff received a right to sue letter.

### III. Plaintiff's Complaint

On November 30, 2011, plaintiff filed the instant Complaint, contending that defendants discharged him because of his race and national origin. In addition to realleging complaints raised in the administrative charge, at paragraph 17, plaintiff alleged for the first time that Defendant Antonucci used the term "Chinaman" several times from March 2008 to December 2009. Complaint at ¶ 17. When deposed as to this allegation, plaintiff averred that he had heard Defendant Antonucci use the term three times. He testified that around December 2009, prior to becoming plaintiff's supervisor, he heard Defendant Antonucci on the phone purportedly say the word "Chinaman," plaintiff's Dep. at 121, but he could remember no other details about the alleged incident. Plaintiff also testified that he remembered another time right after he joined BASF in February 2008, when Antonucci was showing Plaintiff computer software. Plaintiff remembers having a bad cough at the time, but remembers no other details about Defendant Antonucci's alleged use of the term "Chinaman." Id. at 294. Plaintiff then testified that the third time was likely in the March 2010 time-frame when Defendant Antonucci was reviewing a report. Id. at 124-125. Defendant Antonucci denies ever using the term.

Ultimately, plaintiff contends that his Title VII claim against defendant comes down to three assertions:

(1) he reached all his targets on the GPP project, but was fired;

(2) he received a PL1 rating on his 2010 performance review; and

(3) Defendant Antonucci's use of the term "Chinaman" is evidence of that race was a motivating factor in his termination.

## IV. Discussion

### A. Applicable Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the

nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Plaintiff alleges that defendant fired him because of his race and/or national origin in violation of Title VII of the Civil Rights Act of 1964. Where, as here, plaintiff lacks any direct evidence of racial discrimination, the court must analyze his claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Bonds v. Leavitt, 629 F.3d 369, 386 (4th Cir. 2011). Read in a light most favorable to plaintiff, this is a wrongful termination claim.

### B.     Prima Facie Case

To establish a prima facie case of wrongful termination, plaintiff must present evidence upon which a reasonable jury could find that:

> (1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that there were legitimate, non-discriminatory reasons for the employment decisions. If an employer satisfies that requirement, the burden then shifts back to the plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

For purposes of argument, the court will assume without deciding that plaintiff has made the requisite showing as to elements one, two, and four.

Plaintiff has not, however, presented any evidence that at the time he was terminated he was performing his job at a level that met his employer's legitimate expectations. Plaintiff's conclusory allegation that he was performing his work in a satisfactory manner finds no evidentiary support, but is instead contradicted by defendants' evidence that he failed in his responsibilities in managing the GPP project and in ramping up the Acronal 3624 project for production. Further, the undisputed evidence of record indicates that plaintiff was unable to even present a satisfactory report concerning the accomplishments and failures of the GPP project commensurate with his level of expertise. The evidence of record shows plaintiff received a PL5 in 2008, a PL4 in 2009, and a PL1 in 2010 when he was terminated. Plaintiff has presented absolutely no admissible evidence that would support his contention that he reached all of his targets on the GPP project. Thus, plaintiff cannot make out a prima facie case and defendants are entitled to summary judgment.

      **C.**    **Legitimate Reason for Plaintiff's Termination/Pretext**

Defendant likewise points to plaintiff's failure on the GPP and Acronal 3624 projects as the legitimate, nondiscriminatory reason for terminating plaintiff's employment. Defendant's burden at this stage is not one of persuasion, but merely one of production under the burden-shifting scheme of McDonnell Douglas Corp., 411 U.S. 792 (1973). If BASF successfully proffers such an explanation, the burden then shifts back to plaintiff to show that the proffered reason is merely a pretext for discrimination. St. Mary's Hnor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Defendant has made the requisite proffer as discussed more fully above. It is at this point that the burden shifts back to plaintiff attempts show that such reason is merely a pretext for discrimination. Reading all the pleadings in a light most favorable to plaintiff, it appears that he is arguing that Defendant Antonucci's alleged use of the term "Chinaman" in the workplace is evidence that the given reason is mere pretext for discrimination.

As discussed below, plaintiff's allegations of Mr. Antonucci's supposed use of a racially derogatory reference is not admissible in this case. However, the court is concerned with defendant's argument that the use of the term "Chinaman" was, if true, innocuous, as defendants contend that plaintiff also used similar terms to refer to coworkers in what appears to be a diverse workplace. Defendants contend that plaintiff referred to his European colleagues as "Frenchman" or "British man." At the hearing, defendant reiterated its position that the supposed use of the term "Chinaman" was at most ambiguous. Defendants secure little purchase in this argument as the court takes notice that unlike the terms supposedly used by plaintiff, the term "Chinaman" carries with a historically derogatory and belittling meaning, which is highly offensive. Indeed, a person need look no further than a dictionary, which provides that usage of the term "Chinaman" is "*often offensive....*" Merriam-Webster's Collegiate Dictionary 215 (11th Ed. 2003) (emphasis in the original). The court finds no ambiguity in the use of such term.

Despite the offensive nature of the alleged remarks of Defendant Antonucci, they do nothing to satisfy plaintiff's burden. If they were admissible, these remarks without more are not enough to prove discrimination because they do not suggest that Defendant Antonucci was motivated by racial or national origin animus at the time he terminated plaintiff. See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated, and unless the remarks upon which plaintiff

relies were related to the employment decision in question, they cannot be evidence of discrimination.") Indeed, there is absolutely no connection, temporal or otherwise, shown between the comments in and before March 2010 and the adverse employment action taken in August 2010.

Even if some connection had been shown, such comments cannot be considered by this court as plaintiff failed to raise them in his charge of discrimination. Under Title VII

> an employee cannot seek redress in federal court for an employer's alleged discriminatory conduct unless he filed a charge of discrimination with the EEOC within 180 days 'after the alleged unlawful practice occurred.'

Hospodor v. Burlington Industries, Inc., 2000 WL 203933, *1 (4th Cir. 2000) (citations omitted). Here, even if plaintiff had raised such a claim in his charge of discrimination, according to plaintiff's own testimony, the latest such term was used was in March 2010, making such claim time barred as of the date plaintiff filed his charge of discrimination in December 2010.

Not only does the remedial scheme used to enforce Title VII prohibit the use of such remarks in this action, well settled decisions of the Court of Appeals for the Fourth Circuit prohibit this court from allowing such remarks into evidence. Most recently in Balas v. Huntington Ingalls Industries, Inc., 711 F.3d 401 (4th Cir. 2013), the Court of Appeals for the Fourth Circuit reiterated that "federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." Id. at 406. Further, the appellate court held, as follows:

> In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge.
> ***
> In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency.

Id. at 407-408 (citation omitted). The court has carefully review the charge as well as the intake questionnaire and can find no claim that in any manner infers an allegation of racial animus based on Defendant Antonucci's alleged comments. Thus, plaintiff has failed to present any evidence upon which a fact finder could determine that the reason given for his termination was pretext and that racial/national origin animus was a substantial or motivating factor behind his termination.

To rebut the presumption, plaintiff must demonstrate that "as between [the discriminatory reason] and the defendant's explanation, [the discriminatory reason] was the more likely reason for the dismissal, or that employer's proffered explanation is simply unworthy of credence." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). In attempting to satisfy this burden, and with the exclusion of the evidence concerning Defendant Antonucci's alleged remarks, plaintiff has offered only his own speculation that his race and/or national origin was the real motivation of the decision makers, not their perceptions of his job performance. While a plaintiff may present circumstantial evidence to support his claim, unsupported speculation is insufficient to show pretext or defeat a motion for summary judgment. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996); Felty v. Graves- Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Plaintiff's speculation and conjecture raises only a mere possibility of retaliation rather than the reasonable probability which is necessary to support an inference of unlawful motivation. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir. 1982). Speculative assertions that a defendant's real motivation was unlawful is not enough to withstand summary judgment, Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988), and conclusory statements will not satisfy a plaintiff's burden in responding to the motion for summary judgment. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211

(4th Cir. 1987). Finally, unsupported allegations "do not confer talismanic immunity from Rule 56." Ross v. Communications Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985), *overruled on other grounds*, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

Plaintiff's own speculation as to the decision makers' motivation finds no support anywhere in the admissible record. Having not presented evidence of pretext, defendant is also entitled to summary judgment as it legitimate, non-discriminatory reason for plaintiff's termination has not been rebutted.

### D. Supervisory Liability

In addition to being entitled to summary judgment substantively, Defendant Antonucci is also entitled to summary judgment as a matter of law as plaintiff has improperly included such supervisory employee as a defendant in this Title VII action. In Lissau v. Southern Food Service, Inc., 159 F.3d 177 (4th Cir. 1998), the Court of Appeals for the Fourth Circuit held that a supervisory employee is not an "employer" subject to Title VII liability. Similarly, individuals may not be held liable under the ADA:

> Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA.

Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999). See also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994) ("Personal liability would place a heavy burden on those who routinely make personnel decisions for enterprises … and we do not read the [ADEA] as imposing it."); Swaim v. Westchester Academy, Inc., 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001) ("[I]ndividual defendants do not face personal liability under the Americans with Disabilities Act."). Summary judgment will also be granted to Defendant Antonucci on this basis.

## V. Disposition of Other Pending Motions

### A. Plaintiff's Motions

Also pending before the court are plaintiff's Motion to Strike the Affidavit of Jonathan Antonucci (#52), Motion to Strike Declaration of Cheng-Le Zhao (#55), and Motion to Strike Affidavit of Jonathan Antonucci (#69). Plaintiff has shown no legal reason why these statements should not be considered and the motions will be denied.

Plaintiff has also filed a Motion to Seal Exhibits 5& 6 (#71), which are attached to his Amended Affidavit. As such materials contain confidential and proprietary information of BASF, such motion will be allowed for the reasons discussed below in conjunction with BASF's motion.

### B. Defendants' Motion

Finally, defendants have filed a Motion to Seal Confidential and Proprietary Information (#64). In defending BASF's termination of plaintiff, defendants have necessarily referenced the projects on which plaintiff worked and referenced certain procedures and other proprietary information. This court has attempted to minimize reference to specific procedures and proprietary information in this decision.

In considering a motion to seal, the court considers the factors contained in Local Civil Rule 6.1(C). The first factor is found in Local Civil Rule 6.1(C)(1), which requires that the parties adequately describe the materials sought to be sealed. The rule requires "a non-confidential description of the material sought to be sealed." L.Civ.R. 6.1(C)(1). The rule is intended to give third-parties, including the press, fair notice of the nature of the materials sought to be sealed. The description contained in the motion is adequate. The court next considers Local Civil Rule 6.1(C)(2), which requires "a statement as to why sealing is necessary and why

there are no alternatives to filing under seal." L.Civ.R. 6.1(C)(2). Such statement has been provided and is adequate. As to Local Civil Rule 6.1(C)(3), sealing is appropriate to protect BASF's trade secrets in the marketplace. There are, however, no provisions for sealing matters beyond the life of the case, inasmuch as case materials must be placed in the National Archives. If the defendants believe at the conclusion of the case (i.e., after the appellate procedures have been exhausted) that such materials remain sensitive, they should move the Clerk of Court to strike any such sensitive pleadings from the official court record. Finally, the court has considered Local Civil Rule 6.1(C)(4), which requires the moving parties to provide citations of law supporting the relief they seek. The motion is supported by a Memorandum of Law (#64) which contains citations to current case law. Moreover, such request is consistent with <u>Media General Operations, Inc. v. Buchanan</u>, 417 F.3d 424 (4th Cir. 2005). The proposed sealing in this matter is consistent with current case law and federal statutory protections aimed at protecting trade secrets from being disclosed in court proceedings.

Having considered all of the factors provided in Local Civil Rule 6.1(C), the court will grant the Motion to Seal.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) plaintiff's Motion to Strike the Affidavit of Jonathan Antonucci (#52), Motion to Strike Declaration of Cheng-Le Zhao (#55), and Motion to Strike Affidavit of Jonathan Antonucci (#69) are **DENIED**;

(2) plaintiff's Motion to Seal Exhibits 5& 6 (#71) and defendants' Motion to Seal Confidential and Proprietary Information (#64) are **GRANTED**, and such materials are sealed; and

15

(3) defendants' Motion for Summary Judgment (#43) is **GRANTED**, and **JUDGMENT** shall be entered in favor of defendants and against plaintiff dismissing this action in its entirety with prejudice and providing that plaintiff have and take nothing of these defendants.

The Clerk of Court shall enter a Judgment consistent with this Memorandum of Decision and Order.

Signed: July 8, 2013

Max O. Cogburn Jr.
United States District Judge